fEstado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| NELSON DANIEL CENTENO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrida | KLRA202400609 | *Revisión* procedente del Departamento de Corrección y Rehabilitación<br><br>Sobre:<br>Clasificación de Custodia |
|---|---|---|

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 5 de diciembre de 2024.

Comparece Nelson D. Centeno (en adelante, recurrente) mediante un recurso de revisión para solicitarnos la revisión de la determinación emitida y notificada el 30 de agosto de 2024, por el Departamento de Corrección y Rehabilitación (en adelante, DCR).[1] Mediante el Acuerdo del Comité de Clasificación y Tratamiento (en adelante, *Acuerdo*) recurrido, el DCR dejó sin efecto el acuerdo del Comité del 28 de agosto de 2024, en el que se reclasificó la custodia máxima del recurrente a una custodia mediana. Ratificó su custodia a máxima. Sobre dicho *Acuerdo,* el 30 de agosto de 2024, el recurrente presentó una oportuna solicitud de reconsideración. El 27 de septiembre de 2024, notificada al recurrente, el DCR emitió una determinación en la que dispuso no acoger la solicitud instada y declaró *No Ha Lugar* la Reconsideración.

Por los fundamentos que expondremos, se *confirma* el *Acuerdo* recurrido.

---

[1] Apéndice del Recurso y Expediente Administrativo del DCR.

Número Identificador

SEN2024_____

**I**

El presente caso inició el 28 de agosto de 2024, luego de que el DCR suscribiera *un Acuerdo de Comité de Clasificación y Tratamiento.* En el Acuerdo, se dispuso lo siguiente:

**1**. Reclasificar custodia de máxima a mediana. **2.** Solicitar al DCR traslado a institución de mediana Bayamón 501, Guayama 500, Guayama 1000, Correccional Guerrero o Ponce 1000. **3.** Conceder o de bonificación adicional del 1ro febrero 2024 al 1ro agosto 2024.

Fundamentó su determinación de la siguiente forma:

El confinado ha cumplido 5 años, 4 como sumariado y 1 desde su clasificación inicial. Sentencia de 139 años por delitos de Asesinato, Tentativa de Asesinato, Esc[a]lamiento y Ley de Armas. Se ut[i]liza la modificación discrecional de violencia excesiva, por su participación en la muerte a tiros y batazos de un sujeto que a su vez había presuntamente asesinado por celos a su pareja y al hijo de esta. Se reconoce su buena conducta durante los pasados años como sumariado, pero menester continuar observando ajustes dentro de esta custodia.

Dos días más tarde, el DCR dejó sin efecto el antedicho Acuerdo, el cual según indicamos fue suscrito el 28 de agosto de 2024. Entonces, tomada esta determinación y mediante un nuevo Acuerdo, ratificó la clasificación del recurrente, por lo que lo mantuvo en custodia máxima. El recurrente fue notificado en esa misma fecha.

El 10 de septiembre de 2024, el recurrente presentó una solicitud de reconsideración.[2] Esta última no fue acogida por el DCR. El 27 de septiembre de 2024, el recurrente recibió una misiva en la que se le comunicó la determinación final y se le informó que debía continuar observando buenos ajustes institucionales y beneficiarse al máximo de los programas y tratamientos recomendados como parte de su plan institucional.

Inconforme, el 28 de octubre de 2024, presentó un recurso de revisión en el cual esgrimió que el DCR le violentó su derecho al

---

[2] Expediente Administrativo DCR, pág. 1.

retenerlo en custodia máxima a pesar de que este cuenta con un Plan Institucional aceptable, según establecido por el Comité el 28 de agosto de 2024. Aduce que, el *Manual de Clasificación de Confinados* no establece que la reclasificación debe hacerse a los 5 años de la clasificación inicial, sino desde que comienza el confinamiento. Afirma que esto incluye el tiempo cumplido en preventiva. En atención a lo antes expuesto, solicitó la revocación del *Acuerdo* emitido por el DCR el 30 de agosto de 2024 y solicitó que se le ordenara al DCR a reclasificarlo bajo custodia mediana.

Mediante *Resolución* emitida el 6 de noviembre de 2024, le concedimos a la Administración de Corrección hasta el 14 de noviembre de 2024, para presentar copia certificada del expediente administrativo. Además, concedimos al DCR, por conducto de la Oficina del Procurador General hasta el 27 de noviembre de 2024 para exponer su posición en cuanto al recurso.

En cumplimiento con lo ordenado, el 14 de noviembre de 2024, la Administración de Corrección presentó ante nos la copia certificada del expediente administrativo. Por otro lado, el 27 de noviembre de 2024, compareció el DCR por conducto de la Oficina del Procurador General para presentar su *Escrito en Cumplimiento de Orden.* A través de su escrito, esbozó que el Comité de Clasificación y Tratamiento del DCR había aplicado correctamente la modificación discrecional de historial de violencia excesiva. Adujo que la reglamentación de la agencia únicamente establece que el recurrente debía ser evaluado luego de cinco años, como en efecto ocurrió, pero no obligaba al DCR a reclasificarlo en un nivel de custodia menor. Por lo tanto, la reclasificación en este caso era una modificación discrecional de la agencia y debido al historial del recurrente, el comité vio pertinente mantener la reclasificación inicial manteniéndolo así en el nivel de custodia más alto.

Con el beneficio de la comparecencia de ambas partes procederemos a exponer el derecho aplicable.

**II**

### A. Revisión Judicial

El Tribunal Supremo de Puerto Rico ha sostenido que el derecho a cuestionar la determinación de una agencia, mediante revisión judicial, es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[3] El Artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[4] otorga competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[5] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable.[6] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados, y si son compatibles con la política pública que las origina.[7] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (iii) la revisión completa y absoluta de las conclusiones de derecho.[8] Nuestro Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas, cuyos derechos pudieran quedar afectados,

---

[3] *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda,* 179 DPR 720, 736 (2010).

[4] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).

[5] *Asoc. Condómines v. Meadows Dev.*, supra, a la pág. 847.

[6] *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007).

[7] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).

[8] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II,* 179 DPR 923, 940 (2010); *Mun. de. San Juan v. JCA,* 149 DPR 263, 279-280 (1999).

la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[9]

Dentro de este marco, los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[10] Igualmente, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no deben alterar las determinaciones de las agencias, siempre que surja del expediente administrativo evidencia sustancial que las sustente.[11] En mérito de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[12] En cuanto a la referida evidencia sustancial, se ha definido como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[13] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto aquella que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[14] Ello, implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[15] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos, y no los tribunales.[16]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar

---

[9] *Asoc. Vec. Altamesa Este v. Municipio de San Juan*, 140 DPR 24, 34 (1996).
[10] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 35.
[11] *Íd.*
[12] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).
[13] *Batista, Nobbe v. Jta. Directores,* supra, a la pág. 216; *Otero v. Toyota*, 163 DPR 716, 728 (2005).
[14] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997).
[15] *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).
[16] Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.

prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[17] Para ello, deberá demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[18] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho, y no sustituirá el criterio de la agencia por el suyo.[19] En cambio, las conclusiones de derecho son revisables en todos sus aspectos.[20] En esta tarea, los tribunales están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra.[21] Así pues, si el fundamentos de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable en toda su extensión.[22]

Sin embargo, aun cuando el Tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente.[23] Si del análisis realizado se desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el Tribunal debe abstenerse de

---

[17] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).
[18] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[19] *Otero v. Toyota*, 163 DPR a la pág. 728.
[20] *García Reyes v. Cruz Auto Corp.*, 173 DPR a la pág. 894.
[21] *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000).
[22] *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).
[23] *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007); *López Borges v. Adm. Corrección*, 185 DPR 603, 626 (2012).

intervenir.[24] Ahora bien, esta deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y, (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[25]

### B. Manual para la Clasificación de los Confinados

La Constitución del Estado Libre Asociado de Puerto Rico establece como política pública:

> . . . reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social.[26]

En mérito de lo anterior, se ha establecido la clasificación de confinados como un método para la administración eficiente y eficaz del sistema correccional, delegado al Departamento de Corrección.[27] La aludida clasificación consiste en una separación sistemática en subgrupos, en virtud de las necesidades del confinado, desde la fecha de su fecha ingreso hasta su excarcelación.[28] Existen tres (3) niveles de custodia, los cuales se basan en el grado de supervisión que requiere el confinado, estos son: (i) máxima, en la cual se colocan a los confinados que requieren un grado alto de control; (ii) mediana, en la cual se encuentran los confinados que requieren un grado intermedio de supervisión, y (iii) mínima, en la cual los confinados son elegibles para habitar en viviendas de menor seguridad y pueden trabajar fuera del perímetro con un mínimo de

---

[24] *Cruz v. Administración*, 164 DPR 341, 357 (2005).

[25] *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. A.R.Pe.*, supra.

[26] Artículo VI sec. 19.

[27] Introducción del Manual para la Clasificación de los Confinados, Reglamento Núm. 9151 del 22 de enero de 2020; *Rivera Torres v. Universidad de Puerto Rico*, 209 DPR 489, 499 (2022).

[28] Introducción del Reglamento Núm. 9151, *supra.*

supervisión.[29] El nivel de custodia se determinará tomando en cuenta los siguientes factores: "severidad del delito, su historial de delitos anteriores, su comportamiento en instituciones, los requisitos de seguridad y supervisión, y las necesidades de programas y servicios en específico".[30] A su vez, nuestro Tribunal Supremo enfatizó que la determinación, en cuanto al nivel de custodia, requiere que se realice un balance de intereses adecuado. Ello, puesto que, por un lado, se encuentra el interés público de rehabilitar al confinado y de mantener la seguridad institucional y de la población penal; mientras que, por otro lado, se encuentra el interés propio del confinado de permanecer en determinado nivel de custodia.[31]

Luego de que el Departamento de Corrección clasifique de manera inicial a un confinado, tendrá el deber de hacer una revisión periódica en lo que respecta su nivel de custodia.[32] La custodia de aquellos confinados que se encuentran en mínima y mediana deberá ser revisadas de cada doce (12) meses; mientras que, los que se encuentran en máxima, y que cumplieron su primer año en esa clasificación, se les deberá revisar su custodia de cada seis (6) meses.[33] Ahora bien, la revaluación de custodia no necesariamente tiene como resultado el cambio de custodia. Su propósito es evaluar la adaptación del confiando y considerar las situaciones que puedan acaecer.[34] La reclasificación de custodia se llevará a cabo por un Técnico Socio penal quien llenará el formulario de Reclasificación de Custodia, el cual contiene una Escala de Reclasificación.[35] Así, pues la determinación de reclasificar a un confinado será el resultado de:

---

[29] Sec. 1 del Reglamento Núm. 9151, *supra*.
[30] *Íd.*
[31] *Ibarra González v. Depato. Corrección*, 194 DPR 29, 44 (2015), citando a *Cruz v. Administración*, 164 DPR a la pág. 352.
[32] Sec. 1 del Reglamento Núm. 9151, *supra*.
[33] Sec. 7 (III) (B) (1) (a) y (b) del Reglamento Núm. 9151, *supra*.
[34] Sec. 7 (II) del Reglamento Núm. 9151, *supra*; *Rivera Torres v. Universidad de Puerto Rico*, supra, a la pág. 501.
[35] *Rivera Torres v. Universidad de Puerto Rico*, supra, a la pág. 501. Véase, Apéndice K del Reglamento 9151, *supra*.

(1) la puntuación en la evaluación de custodia; (2) las consideraciones especiales de manejo; (3) las modificaciones no discrecionales; (4) las modificaciones discrecionales para un nivel de custodia más alto, y (5) las modificaciones discrecionales para un nivel de custodia más bajo.[36]

Entre las modificaciones no discrecionales se encuentra la Orden de Deportación por Casos o Sentencias Pendientes de Cumplir. El Manual de Clasificación de Confinados define la referida orden como una ". . .expedida contra un confinado, la cual informa a las autoridades que tienen al confinado en su custodia, que otra jurisdicción tiene la intención de asumir la custodia del confinado cuando éste sea puesto en libertad". Los confinados a los cuales se les haya expido la referida orden, deben ser colocados en seguridad mediana.[37]

Por otra parte, entre las modificaciones discrecionales, se encuentra cuando la puntuación subestima la gravedad del delito. Es decir, "[l]os confinados cuyas circunstancias del delito y sus consecuencias hayan creado una situación de tensión en la comunidad, revistiéndose el caso de notoriedad pública y la comunidad se siente amenazada con su presencia".[38] Asimismo, es una modificación discrecional la afiliación prominente con gangas. Ello es cuando:

> [s]e tiene conocimiento de que el confinado es uno de los principales dirigentes de un grupo que ocasiona problemas de manejo y que utiliza la violencia para lograr sus objetivos dentro de un escenario correccional o en la comunidad y además se considera que esta afiliación es un problema de manejo en la institución. Se deben identificar a esos individuos como miembros principales de grupos.[39]

Es necesario que toda modificación discrecional se base en documentación escrita, esta puede ser: "reportes disciplinarios, informes de querellas, informes de libros de novedades, documentos

---

[36] *Rivera Torres v. Universidad de Puerto Rico*, supra, a la pág. 501.
[37] Sec. III (C) del Apéndice K del Reglamento Núm. 9151, *supra.*
[38] *Íd.,* Sec. III (D).
[39] Sec. III (E) del Apéndice K del Reglamento Núm. 9151, *supra.*

del expediente criminal o social y cualquier otra información o documento que evidencie ajustes o comportamiento del confinado contrario a las normas y seguridad".[40]

Por último, cabe resaltar que el Departamento de Corrección merece particular deferencia en cuanto al proceso de clasificación de confinados. Por consiguiente, si una determinación de clasificación de custodia es razonable y cumple con el procedimiento de las reglas y manuales, sin alterar los términos de la sentencia impuesta, debe confirmarse.[41]

**III**

En el presente caso, el recurrente comparece ante nos expresando su inconformidad con el *Acuerdo* del Comité del DCR en el cual se dejó sin efecto el acuerdo establecido por las partes el 28 de agosto de 2024, en el que se le había reclasificado a custodia mediana, por lo que se ratificó su clasificación a custodia máxima. Este afirma que cumple con el criterio de tiempo y el criterio de ajustes de terapia y conducta requeridos por el Plan Institucional para poder ser reclasificado a custodia mediana.

En el *Informe para Evaluación* del Plan Institucional, el DCR expresó lo siguiente:

> Al amparo del Plan de Reorganización del Departamento de Corrección Rehabilitación núm. 2 de noviembre de 2011 y de acuerdo con el Manual de Clasificación de Confinados #9151 que entró en vigor el 22 de enero de 2020, que establece en el proceso de Reclasificación como objetivo de actualizar y revisar la Evaluación Inicial de Custodia del confinado, verificando la adaptación del confinado y prestando atención a cualquier situación que pueda surgir. Se verificará y revisará los datos básicos relacionados a los delitos, sentencias, historial delictivo, órdenes de detención o arrestos, encarcelamientos previos, y fechas de excarcelación previstas, entre otros factores, además de tomar en consideración los programas de tratamiento de los cuales se haya beneficiado el confinado. La reevaluación de custodia no necesariamente tendrá como resultado un cambio en la clasificación de

---

[40] *Íd.,* Sec. III (D).
[41] *Rivera Torres v. Universidad de Puerto Rico,* supra, a las págs. 503-404; *Cruz v. Administración,* 164 DPR a la pág. 355.

custodia o vivienda asignada. Recalca aún más la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión. El confinado ha cumplido 5 años, 4 como sumariado y 1 desde su clasificación inicial. Sentencia de 139 años por delitos de Asesinato, Tentativa de Asesinato, Escalamiento Agravado y Ley de Armas. Se utiliza la modificación discrecional de violencia excesiva, por su participación en la muerte a tiros y batazos de un sujeto que a su vez había presuntamente asesinado por celos a su pareja y al hijo de esta. [C]onducta durante los pasados años como sumariado, pero menester continuar observando ajustes dentro de esta custodia. Se <u>ratifica</u> su custodia máxima.[42]

Tomando en consideración el historial del recurrente, el cual reflejó que este último incurrió en conducta antisocial y violenta, el DCR utilizó su discreción para modificar su nivel de custodia y consecuentemente declarar como No Acogida la solicitud de reconsideración presentada. Expuso lo siguiente al respecto:

En consideración de la totalidad del expediente, donde tenemos que lleva un año y un mes clasificado en custodia máxima y realizando ajustes en institución de casos sentenciados, que cuenta con un mínimo de sentencia para julio de 2044 (dentro de 19 años y 10 meses), que posee una fecha prevista de excarcelación para noviembre de 2153 (dentro de 129 años), que posee historial delictivo previo y se benefició de Probatoria, revocada por la comisión de nuevos delitos, se concurre con la determinación tomada por el Comité de Clasificación y Tratamiento.[43]

Según reseñamos, si la parte afectada no demuestra la existencia de prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial, este Tribunal tiene la obligación de respetar la determinación de la agencia y no sustituir su criterio.[44] Asimismo, resaltamos que el DCR merece particular deferencia en cuanto al proceso de reclasificación de confinados. De manera que, si una determinación de clasificación de custodia es razonable y afín con las reglas y manuales, debe confirmarse.[45]

---

[42] Expediente Administrativo DCR, pág. 13.
[43] Expediente Administrativo DCR, pág. 4.
[44] *Otero v. Toyota,* 163 DPR a la pág. 728.
[45] *Rivera Torres v. Universidad de Puerto Rico,* 209 DPR a las págs. 503-404; *Cruz v. Administración,* 164 DPR a la pág. 355.

En atención a lo antes expuesto, colegimos que el error planteado no se cometió y por lo tanto, la determinación del DCR debe sostenerse.

**IV**

Por los fundamentos que anteceden, se *confirma* el *Acuerdo* recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones